The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, Mr. Fattahi, whenever you're ready, we'd be happy to hear from you. Good morning. May I please the Court? My name is Parwa Fattahi, and I represent the plaintiffs, Mr. Sesay and his daughter, Mabinti Sesay. This matter is before the Court on an appeal of the Maryland District Court's grant of government's motion to dismiss in a case where plaintiffs challenged legality of visa denial for a minor child, an immediate family member of a U.S. citizen. The only requirement for issuance of the visa for such a case is for the parent to be a U.S. citizen and for the child to be under the age of 21 at the time when the parent files the initial family petition for the child. In this case, both of those two requirements were met. Nevertheless, the consulate in Sierra Leone decided not to issue the visa, and in fact, since 2017, the consulate in Sierra Leone has imposed a new requirement. I wouldn't say legal requirement because it's just not anywhere in the law that they're requiring for the kids of U.S. citizens to have taken certain kind of tests, and they're named to be in some national database. Otherwise, they're not issuing the visa until the kids actually go take the test, bring the test results to them, and at that point, they might consider to, and in this case for Mabinti, they even did not afterwards, to issue the visa. Nevertheless, in appeal, we are raising two issues. One is a district court erred and abuses discretion in application of the Administrative Procedures Act, and second, the district court erred and abuses discretion in application of counsel non-reliability doctrine. As for the first count, district court did not apply APA properly because when the court suggested that plaintiffs can seek reconsideration of visa denial through the alternate channels that are fixed by the Congress, at the time when the court was referring us to submission of new documents to the same agency, we have not reached a final decision for reconsideration of the new submitted documents under 22 CFR 42.81. The court... My basic problem here is just trying to stay consistent with the Supreme Court. I'm just not sure we have any authority to look into this, and I think the Supreme Court has been very, very clear about beginning with Justice Kennedy's opinion in DEN and then going on through the adoption of Justice Kennedy's opinion by the full court. And it says that all the counsel needs to do is cite the relevant provision, and here they did more. But I honestly feel I'd be setting myself up, and the court might be setting itself up, for a per curiam reversal if we started going into whether the facts of the case and what the counsel did or didn't do or whatever, because I think the Supreme Court realizes that granting or denial of visas are, you know, there are thousands, multiple thousands, um, of these that could be reviewed in court, and reading the Supreme Court's opinion, it seemed to me it was sending an unmistakable message, which Judge Chazanel picked up on, and the message was, hands off. Your Honor, if I may explain, the two things you should be raising, one is whether the APA, whether the agency action was final to begin with, and whether the case was brought at the proper time. And that seems the judge herself is suggesting that we should go back to agency because that channel is still open. So basically, what she's suggesting is that the action of the agency is not final. So that is the first issue. So if you wanted to deny, dismiss the case based on APA and non-finality of the case, that would be one thing. The other thing is about Dean versus Kerry. Kerry, we did, where Justice Kennedy discussed the issue. And what Justice Kennedy did was, first, you need to make sure there is, is there any facially legitimate reason for the denial at all. And in Dean's case, Ms. Dean's husband had admitted that she had worked with Taliban, and the case was not denied based on misrepresentation. The case had been denied based on terrorism ground. In terrorism ground, the statute is very clear. In terrorism ground, the statute says, if the consular officer has any reason to believe there is any commitment to terrorism activities, they have the right to deny the case. So on that basis, Justice Kennedy said, okay, you admitted that you had worked with Taliban, and the consular officer had the reason to believe that you are inadmissible on that basis. So that was, and the fact that they was, and also what the, the fact that you worked with Taliban was part of it, that's, that's enough. Also, my difficulty with your argument remains, whether we looked at the Dean case, or whether we look at the Mandel case, or the Kleindienst, or wherever you, or whether we look at the other circuit cases, where the Seventh Circuit just recently says, doctrine of consular non-reviewability makes it impossible, or nearly so, for plaintiffs to challenge a visa denial. But I just, I just do not see either the authority of, under the statute, which gives us a right to review this. And I don't see the authority anywhere in the Supreme Court. And I honestly believe, I really do not like being the object of a per curiam reversal. And I'm afraid that that would be how abrupt it would, it would become. I just, I, you know, sometimes in law, your hands are just tied. And I think Judge Chazanel, who's really a fine, very fine district judge, absolutely recognize that. Your Honor, I don't like to bring the cases to courts either. And the parents of the, this kid, the, Mr. Sisay, and his children that are separated are not happy with it either. I totally understand why the law has been set up the way it is, and has given more authority to officers to have a higher level of discretion to deny visas to people who have either committed crimes or who have been, there is a possibility that they have been involved in terrorist activities. But in this ground for misrepresentation, that is not the case. In fact, this court itself has specifically ruled that for misrepresentation cases, government has the burden of proving, of with clear and convincing evidence to, and bringing substantial amounts of evidence that there is a misrepresentation to begin with. Here we have no proof whatsoever that there is a misrepresentation. There is not even one single document on the record that the government is providing to say this one is showing her age is different. They only are talking about their information. And I think that's not correct, because that total information should include also the record of this kid's birth. And we have provided quite a bit of it. Judging the street court has said, basically, has followed Dane and says, okay, in Dane, Judge Kennedy is mentioning the statues enough, plus you have, they have given you more facts. Yes, in terrorism ground, they could do that. And now, judging our cases, here they're saying this statue for misrepresentation, and they're telling you passport is, they think the passport is not right. They think the passport is not right, does not make the passport wrong. There are some authority, there are government agencies in Sierra Leone, who are issuing passports. There are government agencies in Sierra Leone who are issuing the birth certificate. Unless the government is talking about, basically, saying kids who are not taking those tests, they should have, government think they should have taken it anyway. And unless the government thinks that they have the right to impose some new legal requirements for issuance of the visa. And because of that order, people that they have to study, that they have to take tests and bring and I mean, I need to see on what basis they think that a national test result is more important in terms of showing somebody's date of birth and the person's date of birthday. And unless the government thinks that Sierra Leone does not have the right to govern itself, and to decide which government agencies to issue their own legal documents, the government here doesn't have any right whatsoever to impose and tell people what kind of, I mean, to tell people how they should present their age. The government in Sierra Leone has issued the birth certificate. We don't have anything else. I mean, in terms of hospital records, in terms of even my transcript of my baby's previous years, everything has been provided and every single thing points to the fact that her date of birth is May 21, 2000. There's not even one single document that says otherwise. So government has a burden of proving that she is not telling the truth. And what they're doing is they're just based on mere conclusion of why Mabinti's father has talked to her mom to ask whether she has taken tests or not. Therefore, we decided, based on totality of circumstances, as they call it, since she has not taken MPSE, therefore, she's lying. Not every kid has taken a test. Not every kid is living. The problem here, as I'm trying to explain, is that we don't have, nor does the district court have, by virtue of Supreme Court authority or by Congress, we don't have the authority to look into the adequacy of documentation in every visa application. Your Honor, you do have the authority to ask government to provide substantial information, substantial documentation to show misrepresentation to begin with, and on top of that to show how is that a material fact. That is actually what you have done for another case in the past. I'm trying to explain to you that we don't have the authority to review the adequacy of documentation and we don't have the authority to make credibility findings with respect to visa applications. We don't have that authority. The district court doesn't have that authority. The Supreme Court has made clear that we don't have the authority. Congress has not passed a statute that would give the alien abroad or to challenge the denial of a visa. I think if we started down the road of judicial review, we would be brought up short. I just want you to understand. I'm not trying to be not trying to be empty. I'm trying to just let you understand that our hands, at least as I see it, are tied. I totally understand that your hands are tied in requiring documents, but the decision in APA cases are supposed to be done based on the complete record and government has not provided anything on the record to the contrary to what we have provided. On that basis, they cannot even assert misrepresentation to begin with, let alone the fact that they are even considering that to be a material fact here. The only thing that we have is apparently during the interview, the council officer was trying to force Mabinti to say that she is 19 years old and she was saying she's 17 years old. Nevertheless, 19 years old at the time of interview is still under 21 at the time of application of I-130. So there is no material fact here whatsoever by their own admission on that basis and they are not even providing anything at all. The fact that they're trying to just make this whole conclusion of the law instead of actually analyzing of the law and providing us information, providing basically facts that show misrepresentation, rather deciding because they think so. They think she's older, therefore she's older. And truth of the matter is when they asked for the test results and she didn't have it, about seven, eight months later, she became eligible and she finally took the test and we finally presented the result of the test. At that point, they were not even considering it and did the government and the court did have the authority to make the court the defendants to consider the new documents. The court here did not even go there. Mr. Fattahi, I want to thank you for your argument. You have some time for rebuttal. Judge Floyd, do you have any questions you wish to ask Mr. Fattahi? No, sir. I agree with your position. Yeah. Judge Groh, do you have any questions you wish to ask Mr. Fattahi? I do not, sir. I don't see how the district court could have gotten around the DCN. Excuse me, I didn't hear that. I don't see how the district court could have gotten around the DCN or the principle that the consular's decision to deny the visa is immune from judicial review. Yeah. All right. Thank you. And Mr. Fattahi, you have some time for rebuttal. And Mr. Lazaro, we look forward to hearing from you. Thank you very much, Your Honor. It's Alan Lazaro from the U.S. Attorney's Office in Baltimore for the appellees. I'll try to be brief. I want to start with a comment that opposing counsel made multiple times during her opening argument that the government bears a burden by clear and convincing evidence. Now, the appellants devote pages of their opening brief to citing cases, none of which are consular non-reviewability cases. They're asylum cases, they're denaturalization cases, they're deportation cases. And in those contexts, the government does bear a burden. But that burden is inapplicable here to cases like the one at Barr, which involves a visa applicant that's applying from abroad. In situations like ours, 8 U.S.C. 1361 provides that it's not the government's burden of proof, it's the visa applicant's burden of proof. And if they fail to establish to the satisfaction of the consular officer an entitlement to a visa, then no titlement should issue. And again, that's very different from other contexts. For instance, the deportation context, where by regulation, the government does bear a burden of proving deportability by clear and convincing evidence. So the court should reject appellants' attempt to graft an analysis from different contexts to this context to which the consular non-reviewability doctrine applies. The only burden the government has is to provide a facially legitimate and bona fide reason for the denial. And in that, as the court has pointed out, we look at Justice Kennedy's controlling opinion, which has now been adopted by the full Supreme Court in Hawaii. And the consular officer satisfied that burden at page 101 of the joint appendix by informing Mbinte that she was ineligible for a visa, citing to and referencing the statutory language. And we think the analysis really can end there on that prong of the analysis, because there are any number of circuit-level decisions, some of which involve the very same inadmissibility statute at issue in our case, that have considered Justice Kennedy's opinion in the context of a consular non-reviewability application, and have held that where the inadmissibility statute, that's where the analysis ends. But with respect to section 1182A6CI, it's not challenged that that's the applicable statute, is it? That's the applicable statute from our perspective, and I don't understand there to be a challenge from the other perspective on that point either. The analysis can end there, but it actually doesn't have to end there, because in this case, the government actually did much more than reference the statute. There have been some cases that we think perhaps incorrectly have seized on some language in Justice Kennedy's opinion, and they've asked, well, is there a facial connection between the inadmissibility statute referenced and the facts of a particular case? And in this case, it's quite simple to find that facial connection just by looking at just a few brief data points from the chronology. On November 14, 2017, at the very first consular interview, the appellants admitted in the complaint below that the consular officer accused Plaintiff Mabinty of lying about her age. We then fast forward three days, there's a provisional denial under INA 221G, but the consular officer informs Mabinty that she can provide more documentation, and what documentation is that? That's documentation tending to prove her age. We then fast forward litigation, litigation is filed, and then in no less than three times, the State Department at pages 66, 99, and 162 informs appellants and appellants counsel that the visa application is being denied finally, because Mabinty misrepresented her age and presented a false passport. So this process was one that started with the consular officer questioning the veracity of Mabinty's claims about her age, and ended with an explanation that the visa was being denied because she lied about her disability statute, which is for fraud or material misrepresentation. So to the extent that something more is required, which we don't think it is, we have that additional facial connection in this case. And I would also point out that we would actually also pass muster under Justice Breyer's dissent in DIN, which stated that one of the ways the government could satisfy its burden is to give the factual basis for the government's decision. Here we have the factual basis that Mabinty lied about her age and presented a passport in a false identity. Now, appellants counsel said, well, DIN is different because DIN is a terrorism case. DIN has not been limited to terrorism related cases. It's been applied to fraud and misrepresentation cases like the inadmissibility statute at issue in our case. That's the Seventh Circuit's case in Matushkina, and the Second Circuit's 2018 opinion in Zang. I think as this court is recognized now with the benefit of Hawaii now recognizing that Justice Kennedy's opinion was the controlling opinion, and the court in Hawaii recognized that in DIN, Justice Kennedy noted that the government need provide only a statutory citation to a visa denial and didn't limit it to terrorism cases. Is there anything further, Mr. Lazaro? No, Your Honor. I'll stop there. Do either of my colleagues have any questions? Judge Floyd, do you have any questions? No, sir. Judge Grove? No, sir. All right. Thank you very much, Mr. Lazaro. Mr. Fatai, you've reserved some time for rebuttal, and we'd be happy to hear from you. Your Honor, I want to go back to the two issues that we raised. First, again, the court should be deciding whether the APA Final Action Agency was actually met at the time the case was filed, just because the government attorney asserted that it is, and we mistakenly accepted it doesn't make the law any different. And even as we can see the judge herself in her opinion is talking about the fact that we can seek a reconsideration through the agency still, even at the time like that was almost a year after the case had been already filed. So if the case might be dismissed based on APA and not actual non-final agency action, that's a different story. But in here, government is now basically arguing that the violation of INA should be within a context. First, the inadmissibility provisions that are placed in the INA are inadmissibility basically is admissibility happens in two times. Once when the person is applying inside the U.S. for a green card, or when the person applies outside of the government, goes through consular processing, and comes to the U.S. with an immigrant visa, which is what Mabinchi did. There is a reason there are these different provisions of law, specifically some based on, I don't know, public health, based on terrorism grounds, based on crime, or based on misrepresentation has been placed in the INA. Each fund is having a different standard that should be applied for the decision as to whether or not this person is able to be coming to the U.S. or not and get the visa or not. So just because it should not, when the government is arguing that we argue several cases based on asylum or also the different kind of context, but not within the context of consular non-reviewability, well, because there was no such a thing before. This is a new thing since 2017 that's happening. We have never, we have never seen anything like it before, that the children of U.S. citizens are going to the, to the consulate, and they're not being getting visa because the consular thinks they're lying since there is no test taking. That is an absolutely bogus ground. It's just, it is like out of imagination. This is just like a made up excuse. And that is exactly the reason that it should be investigated. And you do have the authority to investigate it. Just because the case might be decided otherwise at the Supreme Court level, it doesn't mean we should shy away from it. And I didn't shy away from it, regardless of how challenging it is and how how difficult it is. And there might be sometimes a first time for everything. So you don't want to be, at the same time, what the government is arguing here is about facial connection. They're constantly trying to bring this word facial connection into context here. There is no such a thing as facial connection in any of the case law. But what there is, is the facial, the denial should be based on a facially legitimate. And Justice Kennedy also explains that that means it should be reasonable within the context of the law. That's why Justice Kennedy, in fact, went through the law based on the terrorism ground of inadmissibility, analyzed it, and then reached the conclusion that it was reasonable because the law allows you, just a violation and therefore deny the case. Here in this context of willful misrepresentation of material facts, just stating the statute and also saying, oh, by the way, it is connected, facially connected to passports, it does not meet the burden. Because even this court itself has that this ground of inadmissibility requires substantial documentation. And all of this should be on the record. There is no, not even one single document that says otherwise about Navinti's age. The fact that they are trying to reach conclusion based on no reason, shows their bad faith. And as for her age, they never mentioned what is her age, not just providing anything. They're not even mentioning anything simply because they really don't have anything. And there is really nothing anyway to begin with. As to Dean has been applied in other cases is being applied here or there. Well, I'm taking it that when people are not challenging the matter, and they're not standing up to what's happening to based on what we've been seeing the past four years, of course, it's going to start being applied here or there. It doesn't mean it's right. It doesn't mean we shouldn't stand up to it. And what I would like you to understand is, the other side of the challenge is by allowing government to randomly like this, denying children of US citizens from coming to the United States, regardless of how complete their documents, documentations are, you're basically giving government a blank check to deny these cases without ever being held accountable. All right, Mr. Fatahi, I want to thank you for your argument. We appreciate that. And we appreciate Mr. Lazaro's argument. And as I mentioned in the previous case, it's disappointing that we can't come down and shake your hands and thank you in person. But we do appreciate it.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Gina M. Groh